TRACY L. WILKISON
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
JOSEPH T. MCNALLY (Cal. Bar No. 250289)
SCOTT D. TENLEY (Cal. Bar No. 298911)
ASHWIN JANAKIRAM (Cal. Bar No. 277513)
Assistant United States Attorneys
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3500
     Facsimile: (714) 338-3561
     E-mail:    scott.tenley@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Nos. SA CR 14-034-JLS |
|---|---|
| Plaintiff, | SA CR 15-077-JLS |
| | SA CR 15-147-JLS |
| v. | SA CR 15-148-JLS |
| | SA CR 15-155-JLS |
| MICHAEL D. DROBOT, et al., | SA CR 16-008-JLS |
| Defendants. | GOVERNMENT'S SUPPLEMENTAL POSITION STATEMENT REGARDING RESITUTION CLAIMS AGAINST ALAN C. IVAR; ADDITIONAL SUPPORTING DOCUMENTATION AND CLAIM FROM VICTIMS |
| | Hearing Date: June 29, 2018 |
| | Hearing Time: 11:30 a.m. |
| | Location: Courtroom of the Hon. Josephine L. Staton |
| | Time Est.: 90 minutes |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Central District of California and Assistant United States Attorneys Joseph

T. McNally, Scott D. Tenley, and Ashwin Janakiram, hereby files its supplemental position statement regarding restitution claims against Alan Ivar and additional supporting documentation and a claim from victims.

This supplemental position statement is based upon the attached memorandum of points and authorities, the attached victim impact statements and supporting documentation (submitted under seal), the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 22, 2018    Respectfully submitted,

TRACY L. WILKISON
Attorney for the United States,
Acting Under Authority Conferred by
28 U.S.C. § 515

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office

         /s/
_____
JOSEPH T. MCNALLY
SCOTT D. TENLEY
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On May 11, 2018, the government filed its memorandum regarding restitution claims made against defendants Michael D. Drobot, Michael R. Drobot, Philip Sobol, James Canedo, and Michael Barri ("Opening Restitution Brief").  On June 8, 2018, defendant Alan Ivar was sentenced by this Court.  United States v. Ivar, No. SA CR 15-147-JLS.  During sentencing, the Court set a restitution hearing as to defendant Ivar for June 29, 2018, concurrent with restitution hearings ordered for other related defendants.  On June 15, 2018, this Court issued an order in the Ivar matter directing the parties to file any position statements by June 22, 2018.  (CR 81.)  Accordingly, the government hereby submits a supplemental position statement setting forth its position as to the restitution claims submitted against Ivar.[1]

In addition, the government has received additional documentation from a victim since submitting the Opening Restitution Brief.  That additional documentation is attached to the accompanying declaration, with a brief discussion of that documentation set forth below.  On June 21, 2018, the government also received one additional victim claim, which is also discussed below.

---

[1] The government incorporates by reference the Opening Restitution Brief as part of the record regarding restitution as to defendant Ivar.  An unredacted copy of the government's May 11, 2018 restitution brief and all supporting documentation was provided to Ivar's counsel by U.S. Mail, with additional documentation provided by email.  (Declaration of Scott D. Tenley ("Tenley Decl.") ¶ 3.)  The brief was also filed on the docket in the Ivar matter on June 22, 2018.

**II.   SUMMARY OF VICTIM CLAIMS AGAINST IVAR**

The government sets forth below a summary of the three claims made against Ivar, plus the government's recommendation to the Court as to each claim.[2]

**A.   AIG (Exhibit E, p. 14)**

1.   <u>Summary of Claim</u>

AIG seeks restitution from Ivar in the amount of $1,041,992.41. (14-15.)  This claim was addressed in the Opening Restitution Brief. AIG's claim against Ivar is based on AIG's payments to kickback-tainted surgeons for surgeries performed at Pacific Hospital during the scheme.

2.   <u>Government's Position and Recommendation</u>

There is not sufficient evidence for the Court to award restitution as to Ivar.  AIG is requesting restitution in the total amount it paid on all claims.  AIG does not provide any evidence that the surgeries were not performed, were medically unnecessary, or were over billed because of the kickback scheme.  <u>See, e.g.</u>, <u>United States v. Arutunoff</u>, 1 F.3d at 1112, 1121 (10th Cir. 1993) (Restitution is not intended to "provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses.").  Restitution is intended to make the victim whole and AIG would have paid for medically necessary surgeries and hardware regardless of the kickback scheme.

---

[2] Exhibits A through JJ were attached to the Declaration of Joseph T. McNally submitted in connection with the Opening Restitution Brief.  Exhibits KK and LL are attached to the concurrently filed Tenley Declaration.

2

**B.     Tristar (Exhibit AA, p. 601-602)**

    1.     <u>Claim Summary</u>

Tristar contends that between 1990 and 1991, it made "approximately 40 medical payments to Ivar and South Coast Rehab." (602.)  Tristar has been able to determine the precise amount paid to Ivar during that period, or the portion of that amount that constitutes a kickback.

    2.     <u>Government's Position and Recommendation</u>

The Court should not award restitution.  In his plea agreement, Ivar admitted to criminal conduct beginning in or around 2000.  (CR 6, Plea Agreement ¶ 18.)  The government is not aware of any evidence suggesting that Ivar solicited or received kickbacks in 1990 and 1991.  Moreover, Drobot did not own Pacific Hospital in 1990 and 1991.

**C.     ███████████     (Ex. I, II, KK)**

    1.     <u>Claim Summary</u>

███████'s claims are summarized in the Opening Restitution Brief, and supplemented in Section III, below.  ███████ seeks approximately $4,061,694 in damages from Drobot, Canedo, Drobot Jr., Cohen, Ivar, Barri, Sobol, and Martin based on two surgeries ███████ performed at Pacific Hospital.  (82-83, 302-304.)

    2.     <u>Government's Position and Recommendation</u>

Consistent with the government's position set forth in the Opening Restitution Brief, Ivar is not liable to ███████ because he is an individual medical provider and did not participate in conduct that led to ███████'s kickback-tainted surgery.

**III. ADDITIONAL DOCUMENTATION AND CLAIM**

    **A.    Additional Documentation from** ▮

    Attached as Exhibit KK is additional documentation from ▮ in support of her claim for restitution.[3] In the Opening Restitution Brief, ▮'s documentation was identified as Exhibits lettered I and II. According to ▮, the documentation included in Exhibit KK further establishes that the spinal surgery she received was not medically necessary. This documentation includes a June 13, 2018 letter from Dr. Scott C. Lederhaus, who concludes that "no surgery was necessary as [▮] did not have any nerve root compression." (Ex. KK at 958-60.) ▮ contends, in part, that Drobot was a part owner of True MRI, one of the providers of ▮'s MRI scans. According to ▮, True MRI scans were the only scans used to justify ▮'s surgery; MRI scans from companies unaffiliated with Drobot did not indicate that surgery was warranted. A letter from ▮ summarizing her restitution and medical necessity position is included at page 952-56 of Exhibit KK.

    **B.    ▮ (Ex. LL)**

    1.    <u>Claim Summary</u>

    ▮ seeks restitution in the amount of between $256,389.25 and $337,906.69 from unspecified defendants for harm resulting from a surgery performed at Pacific Hospital. ▮ obtained surgery from Dr. ▮ at Pacific Hospital of Long Beach on August 24, 2012. According to Dr. Duncan Q. McBride, Chief of the Division of

---

[3] Footnote 5 to the government's May 11, 2018 restitution submission noted that ▮ expected to provide additional documentation regarding medical necessity at a later date.

4

Neurology at Harbor-UCLA Medical Center, ▮ underwent a surgery that was "totally unnecessary." (Ex. LL at 964.) According to Dr. Duncan, "Dr. ▮'s operative report contains an extensive list of inappropriate procedures that were claimed to be done in order to boost the billing and collection." (Id.) The surgery was based on an MRI report that Dr. Duncan believes is "entirely normal." (Id.) (emphasis original.) ▮ has suffered damages because he graduated from the Los Angeles Sheriff's Department Academy but has been unable to work because of the faulty surgery performed by Dr. ▮.

2. Government's Position and Recommendation

▮ had a kickback-tainted surgery and may be entitled to restitution. At the time of ▮'s surgeries, Drobot paid ▮ kickbacks via a "sham" management agreement.

As with ▮ and ▮ (discussed in the Opening Restitution Brief), a restitution award requires: (1) the Court make a legal finding that Drobot and others are liable for damages arising out of a kickback tainted surgery that was performed without informed consent or (2) hold an evidentiary hearing to determine causation – i.e., the surgery was not medically necessary and performed because of the kickback scheme. ▮ presents an opinion from the Chief of the Division of Neurology at Harbor-UCLA Medical Center, Dr. McBride, that ▮'s surgery was medical unnecessary and has caused him injury.

Dr. McBride also opines that it is unknown whether ▮ has counterfeit hardware implanted during his surgery. The government's investigation did not uncover evidence of Drobot and other co-conspirators' use of counterfeit hardware. The government cannot

5

prove from its investigation that Drobot or other co-defendants used counterfeit hardware.

Drobot, Canedo, Drobot Jr., and Martin are liable for any restitution as they each participated in orchestrating, facilitating, and managing the kickback scheme.  Ivar, Barri, Sobol, and Cohen are not liable because they are individual medical providers and did not participate in conduct that led the ███'s kickback arrangement.